**Christine KURDYLA, Plaintiff,**

v.

**PINKERTON SECURITY, a California Corporation; Exxon Research, a New Jersey Corporation, Daryl Swiniski and John Does 1–3, employees of Pinkerton and Exxon, Defendants.**

**No. CIV.A. 00–02401(MLC).**

United States District Court,
D. New Jersey.

Oct. 13, 2000.

Karen F. DeSoto, Eric M. Bernstein & Associates, L.L.C., Warren, NJ, for Plaintiff.

Joseph T. Walsh, III, Amy C. Grossman, McCusker, Anselmi, Rosen, Carvelli & Walsh, P.A., Chatham, NJ, for Exxon Research and Daryl Swiniski.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on the motion of defendants Exxon Research[1] and Daryl Swiniski[2] under Federal Rule of Civil Procedure Rule 12(b)(6) to dismiss Counts I through IV of plaintiff Christine Kurdyla's Second Amended Complaint insofar as the counts contain claims against Exxon Research and Daryl Swiniski. Plaintiff asserts claims against Pinkerton Security ("Pinkerton"), Exxon Research, Daryl Swiniski, and unknown employees of Pinkerton and Exxon Research under the New Jersey Law Against Discrimination ("NJLAD"). Exxon Research and Daryl Swiniski seek the dismissal of these claims on the grounds that plaintiff is not an employee of Exxon Research and therefore is not protected by the NJLAD. For the reasons expressed below, this motion to dismiss is denied.

## BACKGROUND

Christine Kurdyla began working for "Exxon/Pinkerton" on October 1, 1995 as a "life safety operator,"(Second Am. Compl. Count I, ¶ 3.), or security guard.[3] (Pl.'s Br. in Opp. at 4.) While working as a guard, plaintiff allegedly suffered from sexual harassment, (Second Amended Complaint Counts I–III), gender discrimination, (id. Count IV), and a Federal Family and Medi-

---

1. According to the movants, Exxon Research and Engineering Company is now ExxonMobil Research and Engineering Company. (Def.'s Br. in Supp. at 4.) Plaintiff's brief also refers to the defendant as "Exxon–Mobil." (Pl.'s Br. in Opp. at 1.) For the sake of clarity, the Court will refer to this defendant as Exxon Research.

2. The materials submitted to this Court do not spell Daryl Swiniski's name consistently. The Second Amended Complaint and the case caption spell his name "Daryl Swiniski." The Notice of Removal states that the correct spelling is "Darrell Swinicki." (Not. of Removal ¶ 9.) The briefs submitted for this motion spell the name "Darryl Swiniki." (Def.'s Br. in Supp. at 4; Pl.'s Br. in Opp. at 4.) The Court will follow the caption and refer to the party as "Daryl Swiniski."

3. Because the Court declines to convert this motion to dismiss into a motion for summary judgment, the factual details are predominantly taken from plaintiff's Second Amended Complaint.

**130**

cal Leave Act violation, (*id.* Count V). "After working at Exxon/Pinkerton for two (2) years," plaintiff was terminated. (*Id.* Count IV, ¶ 2.)

Christine Kurdyla originally filed her action in the Superior Court of New Jersey, Law Division, Somerset County on or about October 9, 1999. (Not. of Removal ¶ 1.) In her Second Amended Complaint filed on or about April 19, 2000, Christine Kurdyla for the first time asserted a claim under federal law, specifically the Federal Family and Medical Leave Act.[4] (*Id.* ¶ 3). In response, Pinkerton, with the consent of the attorney for Exxon Research and Daryl Swiniski, filed a Notice of Removal with this Court on or about May 17, 2000.

Plaintiff's Second Amended Complaint contains a number of allegations concerning her relationship with Exxon Research. Plaintiff worked at "Exxon/Pinkerton as a life safety operator." (Second Am. Compl. Count I, ¶ 3.) Daryl Swiniski and the unknown defendants are also "employees of Pinkerton & Exxon." (*Id.* ¶ 6.) Plaintiff further alleges that Exxon Research is "the ultimate parent corporation of Pinkerton." (*Id.* ¶ 2.) She asserts that "[u]pon information and belief, Exxon maintains control over the operations, business and practices of Pinkerton." (*Id.*) Both Pinkerton and Exxon Research are allegedly "employers" as defined by the NJLAD. (*Id.* ¶¶ 4–5.)

Exxon Research and Daryl Swiniski argue that dismissal is required because Christine Kurdyla is not an employee of Exxon Research and therefore cannot sue the company under the NJLAD. They contend that the NJLAD only protects employees and not independent contractors. (Def.'s Br. in Supp. at 11.) Relying almost exclusively on materials other than the pleadings, (*id.* at 13–16), defendants argue that "[p]laintiff simply cannot set forth any set of facts that would render her an employee" of Exxon Research or Swiniski, (*id.* at 18). Therefore, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be granted because plaintiff can never make out a claim entitling her to relief under the NJLAD. (*Id.*)

Also relying heavily on materials outside of the pleadings, (Pl.'s Br. in Opp. at 8–14), Christine Kurdyla responds that: (1) the evidence to date at least establishes "a genuine material issue" of fact on the question of whether an employer-employee relationship existed between herself and Exxon Research and Daryl Swiniski (*id.* at 13.); and (2), because she has yet to begin discovery, granting this motion would be inappropriate considering the likelihood that she may uncover even more materials, such as insurance, tax, and health benefits evidence, indicating the existence of an employer-employee relationship,[5] (*Id.* at 1–2, 11–12).

4. Plaintiff's Second Amended Complaint contains five counts. Count I alleges "quid pro quo sexual harassment" on the part of Pinkerton and Exxon Research in violation of the NJLAD. Pinkerton and Exxon Research allegedly required plaintiff to submit, as a condition for job benefits and the avoidance of detrimental treatment, to the harassing behavior of Daryl Swiniski and the other individual defendants who created an environment of harassment through the authority given by the two companies. (Second Am. Compl. Count I, ¶¶ 6, 7.) Pinkerton and Exxon Research allegedly would have known of this harassment if they had exercised due care. (*Id.* ¶ 7.) Count II alleges "hostile work environment" sexual harassment under the NJLAD, arising out of the severe conduct of the individual defendants who were given the authority by Pinkerton and Exxon Research to create a hostile environment. (*Id.* Count II, ¶ 2, 7.) Plaintiff alleges as Count III that Pinkerton and Exxon Research are liable, presumably pursuant to the NJLAD, for the actions of the individual defendants under a theory of respondeat superior.

(*Id.* Count III, ¶¶ 2–4.) Count IV alleges a violation of NJLAD's prohibition of gender discrimination arising out of (1) plaintiff's termination from employment because of her maternity leave, (2) the denial of financial opportunities due to plaintiff's gender, and (3) plaintiff's replacement by a male employee. (*Id.* Count IV, ¶¶ 2–4.) In the final Count, plaintiff alleges that Pinkerton violated the Federal Family and Medical Leave Act by agreeing to give plaintiff leave under the statute and then failing to reinstate plaintiff to the same position and pay when she returned to work. (*Id.* Count V, ¶¶ 2–4.)

5. Defendants respond by arguing that: (1) plaintiff's discovery contention fails because all of the evidence demonstrates that plaintiff was not employed by Exxon Research or Daryl Swiniski and that, "under any reading of the plaintiff's allegations and testimony, [Exxon Research] was not her employer," (Def.'s Reply Br. in Supp. at 3–4); (2) plaintiff's arguments merely demonstrate that she was a Pinkerton employee, (*id.* at 5–6); and (3) the evidence in the record conclusively shows

## DISCUSSION

### A. Rule 12(b)(6) Motions to Dismiss and Reference to Matters Outside the Pleadings

■ When confronted with a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a court generally may only consider allegations in the complaint, exhibits attached to the complaint, and public records. *See, e.g., Beverly Enters., Inc. v. Trump,* 182 F.3d 183, 190 n. 3 (1999), *cert. denied,* 528 U.S. 1078, 120 S.Ct. 795, 145 L.Ed.2d 670 (2000); *Childs v. Meadowlands Basketball Assocs.,* 954 F.Supp. 994, 997 (D.N.J.1997) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993)). A court has discretion to convert a Rule 12(b)(6) motion into a motion for summary judgment by considering materials extrinsic to the pleadings.[6] *See* Fed. R. Civ. Pro. 12(b); *see also Childs,* 954 F.Supp. at 997 (citing *Kulwicki v. Dawson,* 969 F.2d 1454, 1463 (3d Cir.1992)). A court should not convert a motion, however, when little or no discovery has occurred. *See, e.g., id.; Brennan v. National Tel. Directory Corp.,* 850 F.Supp. 331, 335–36 (E.D.Pa.1994) (citations omitted).

■ Christine Kurdyla clearly asserts in her brief that she "has not even begun the discovery process," and she further claims that she may "uncover additional and various insurance, tax and health benefit issues" indicating the existence of an employer-employee relationship between herself, Exxon Research, and Daryl Swiniski. (Pl.'s Br. in Opp. at 11.) While certain facts do support a conversion of this motion to a motion for summary judgment,[7] this case is at the beginning of the discovery process. Even the parties' use of materials other than the pleadings does not mandate a conversion. *See, e.g., Childs,* 954 F.Supp. at 997 (refusing to convert motion to dismiss to motion for summary judgment even though both parties submitted affidavits); *Morris v. Azzi,* 866 F.Supp. 149, 149 (D.N.J.1994); *Brennan,* 850 F.Supp. at 335–36. Therefore, the Court will not convert the motion to a motion for summary judgment, and it will not consider the additional materials submitted by the parties.[8]

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court "accept[s] as true all the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view[s] them in the light most favorable to the nonmoving party." *Rocks v. Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). Dismissal is inappropriate unless it clearly appears that plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Robb v. Philadelphia,* 733 F.2d 286, 290 (3d Cir. 1984). In order to survive a Rule 12(b)(6) motion, "it is not necessary for the plaintiff to plead evidence, and it is not necessary to plead the facts that serve as the basis for the claim." *Morris,* 866 F.Supp. at 152 (citing

that Exxon Research lacked the necessary control over the plaintiff's activities to make it her employer, (*id.* at 8–9). As in their initial brief, the defendants make extensive references to materials outside of the pleadings. (*Id.* at 3–10.)

**6.** Federal Rule of Civil Procedure 12(b) provides:

.... If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

**7.** The defendants acknowledge that the motion could be converted into a summary judgment motion, (Def.'s Br. in Supp. at 5 n. 1), and the plaintiff refers on one occasion to the motion as a motion for summary judgment, (Pl.'s Br. in Opp. at 14). Both parties also submitted and rely on various materials other than the pleadings. *See, e.g., Nubenco Enters., Inc. v. Inversiones Barberena, S.A.,* 963 F.Supp. 353, 361 (D.N.J.1997) (converting motion to dismiss to summary judgment motion because both sides submitted and relied on matters other than pleadings).

**8.** A conversion to a summary judgment motion would also be inappropriate because a court cannot grant summary judgment without providing the opposing party adequate time to discover and present material facts. *See, e.g., Liberty Lincoln–Mercury v. Ford Motor Co.,* 134 F.3d 557, 569 (3d Cir.1998); *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 183 (3d Cir.1997). The Court believes it is inappropriate to convert this motion and then have to deny summary judgment without prejudice because of prematurity.

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir.1977)).

## B. *NJLAD'S INDEPENDENT CONTRACTOR/EMPLOYEE DISTINCTION*

■ The NJLAD protects only employees and does not cover independent contractors. *Carney v. Dexter Shoe Co.*, 701 F.Supp. 1093, 1101–1102 (D.N.J.1988); *Pukowsky v. Caruso*, 312 N.J.Super. 171, 178–80, 711 A.2d 398, 402–03 (App.Div.1998). The NJLAD defines the terms "employer"[9] and "employee"[10] generally without much guidance on how to resolve this issue. In *Pukowsky v. Caruso*, 312 N.J.Super. 171, 178–80, 711 A.2d 398, 402–03 (App.Div.1998), the Appellate Division of the New Jersey Superior Court determined, based largely on a review of the judicial interpretation of comparable federal and state anti-discrimination enactments, that the NJLAD does not protect independent contractors. *Pukowsky*, 312 N.J.Super. at 178–80, 711 A.2d at 402–03.[11] This decision affirmed the earlier view of the federal district court in *Carney v. Dexter Shoe Co.*, 701 F.Supp. 1093, 1101–1102 (D.N.J.1988). The *Carney* court concluded that "[b]ecause the proscriptions [of the NJLAD] apply to an 'employer,'—as they do under the terms of ADEA—it is inescapable that the 'individual' on the receiving end of the employer's conduct must be an employee or prospective employee in order for the statute to apply." *Id.* at 1102. Like the Appellate Division, the court bolstered its conclusion by examining case law on the federal Age Discrimination in Employment Act and the New York Human Rights Law. *Id.*[12]

---

9. An "employer" includes:

   ... all persons as defined in subsection a. of this section unless otherwise specifically exempt under another section of this act, and includes the State, any political or civil subdivision thereof, and all public officers, agencies, boards, or bodies.

   N.J. Stat. Ann. § 10:5–5(e). The statute also defines the term "person" broadly as including:

   ... one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries.

   N.J. Stat. Ann. § 10:5–5(a).

10. The statutory definition of "employee" states that an " '[e]mployee' does not include any individual employed in the domestic service of any person." N.J. Stat. Ann. § 10:5–5(f).

11. No decision of the New Jersey Supreme Court on the question of whether the NJLAD protects independent contractors has been found. In such a circumstance, a federal court applying state law should defer to a decision of a state's intermediate appellate court "unless [the federal court is] 'convinced by other persuasive data that the highest court of the state would decide otherwise.' " *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 227–28 (3d Cir.1999) (quoting *Pittston Co. v. Allianz Ins. Co.*, 124 F.3d 508, 516 (3d Cir.1997) (quoting *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940))).

12. The Director of the New Jersey Division on Civil Rights did conclude in dictum that the NJLAD protects independent contractors. The Director held that the distinction between independent contractors and employees has "no bearing on the issue of potential liability for discrimination." *Heather Stanavitch v. Wakefern Food Corp.*, OAL Docket No. CRT 8344–89, Agency Docket No. EM05WB28193–E, 1992 WL 276975, 1992 N.J. AGEN LEXIS 4631, at *36 (Div. on Civil Rights June 10, 1992). The Director reached this conclusion based on the "plain meaning" of the statutory provision prohibiting "any person to refuse to buy from, sell to, lease from or to, license, contract with, or trade with, provide goods, services or information to, or otherwise do business with any person on the basis of the ... sex ... of such other person," N.J. Stat. Ann. § 10:5–12(*l*). *Stanavitch*, 1992 WL 276975, 1992 N.J. AGEN LEXIS 4361, at *36. Presumably, the Director believed that, because this provision is clearly not limited to employees, the NJLAD applies to independent contractors.

The Court is not bound to follow this administrative interpretation. While the Director's interpretation is entitled to a certain degree of deference, *Clowes v. Terminix Int'l, Inc.*, 109 N.J. 575, 590–91, 538 A.2d 794, 802 (1988), a court does not have to accept even a long-standing administrative interpretation as binding, *see, e.g., GE Solid State Inc. v. Director, Div. of Taxation*, 132 N.J. 298, 313–14, 625 A.2d 468, 475 (1993). The Director rendered this decision several years before the first reported Appellate Division pronouncement on this issue in *Pukowsky*. The interpretation also constitutes dictum because the Director even admitted that it was unnecessary to reach the question of whether or not the NJLAD protects independent contractors. *Stanavitch*, 1992 WL 276975, 1992 N.J. AGEN LEXIS 4631, at *35. Therefore, given the context of the opinion and the nature of the conclusion as dictum, it does not affect our finding that the New Jersey Supreme Court most likely would hold that the NJLAD only protects employees and not independent contractors.

Though the NJLAD requires a distinction between employees and independent contractors, the proper basis for this distinction is unsettled. Tests have been developed to characterize individuals as employees and independent contractors under a variety of statutes. *See, e.g., Pelliccioni v. Schuyler Packing Co.*, 140 N.J.Super. 190, 196–202, 356 A.2d 4, 7–10 (App.Div.1976) (Federal Employers' Liability Act); *Blessing v. T. Shriver & Co.*, 94 N.J.Super. 426, 429–434, 228 A.2d 711, 713–15 (App.Div.1967) (workers' compensation).

The *Carney* and *Pukowsky* courts discussed federal antidiscrimination statutes in developing a test to be used under the NJLAD. *Carney*, 701 F.Supp. at 1098–1102; *Pukowsky*, 312 N.J.Super. 171, 182–83, 711 A.2d at 404–05. The *Carney* court relied on the multi-factor test developed by the Third Circuit in *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32 (3d Cir.1983), for Age Discrimination in Employment Act ("ADEA") cases, *Carney*, 701 F.Supp. at 1098–1100. This test represents a "hybrid" approach combining the traditional common law focus on the defendant's right to control the alleged employee's efforts with the more contemporary emphasis on the economic realities of the relationship between the parties. *Zippo Mfg. Co.*, 713 F.2d at 36–38. Under this method, "[t]he extent of the employer's right to control the 'means and manner' of the worker's performance is the most important factor." *Carney*, 701 F.Supp. at 1098 (quoting *Zippo Mfg. Co.*, 713 F.2d at 37) (citation omitted). The Court, however, must also consider:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the 'employer' pays social security taxes; and (11) the intention of the parties.

*Id.* at 1098 (quoting *Zippo Mfg. Co.*, 713 F.2d at 37).[13] The *Pukowsky* court quoted the same basic multi-factor test,[14] but it did not adopt any particular test because it found that the tests developed by the federal courts are very similar and that the plaintiff failed to qualify as an employee under any variation. 312 N.J.Super. at 182–83, 711 A.2d at 404–05.

This Court finds it unnecessary to adopt a particular test given the context of this case and the similarity between the alternative tests. We will use the *Zippo* standard for purposes of analysis. However, because the United States Supreme Court has called into question the validity of the hybrid test and in order to provide a complete analysis,[15] the

---

**13.** The *Carney* court did not expressly hold that the *Zippo* standard applies to claim under the NJLAD. Most of its discussion of this standard occurred in the context of a pendent Age Discrimination in Employment Act ("ADEA") claim. 701 F.Supp. at 1098–1102. But the court did hold that, because the plaintiff could not be considered an employee under the ADEA, he could not be an employee under the NJLAD. *Id.* at 1102; *see also* Rosemary Alito, *New Jersey Employment Law* § 4–5, at 154–55 (2d ed.1999) (treating *Zippo* standard as stated in *Carney* as test for NJLAD).

**14.** Because the Appellate Division quoted a different opinion in laying out the test, the terminology used by the Appellate Division differs slightly from the terminology used by *Carney* and *Zippo*.

312 N.J.Super. at 182–83, 711 A.2d at 404 (quoting *Franz v. Raymond Eisenhardt & Sons, Inc.*, 732 F.Supp. 521, 528 (D.N.J.1990) (citing *Zippo Mfg. Inc.*, 713 F.2d at 37)). But, aside from a slight difference in words, the test is the same.

**15.** Though not mentioned by *Pukowsky*, some doubt exists over whether or not the *Zippo* standard had been overruled. The United States Supreme Court in *Nationwide Mutual Insurance Company v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), ruled that, in order to be considered an "employee" under the Employee Retirement Security Act, an individual must meet the common-law agency test, *id.* at 323, 112 S.Ct. 1344. In the process, it stated that, when Congress uses the term "employee" without a statutory definition, it intends to refer

Court will also take into account the additional considerations of the common-law agency test such as how employee benefits were provided.[16] *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323–24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (quoting *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)).

A plaintiff may be an employee of more than one entity. Courts have recognized that an individual may be an employee of multiple employers under a particular statute, including anti-discrimination enactments. *See, e.g., Gryga v. Ganzman,* 991 F.Supp. 105, 108 (E.D.N.Y.1998), *certification for appeal granted,* No. 97 CV 3929, 1998 WL 229127 (E.D.N.Y. Apr. 7, 1998) (Title VII); [17] *Walker v. Correctional Med. Sys.,* 886 F.Supp. 515, 519–22 (W.D.Pa.1995) (finding

prison nurse to be employee of county for purposes of Title VII even though she was employed by medical services contractor); *Blessing,* 94 N.J.Super. at 429–30, 228 A.2d at 713 (New Jersey's workers' compensation statute); *cf. Hebard v. Basking Ridge Fire Co.,* 164 N.J.Super. 77, 83–84, 395 A.2d 870, 873 (App.Div.1978) (stating in NJLAD case that members of volunteer fire company are employees of both township and fire company because township has substantial fiscal and supervisory control over company).

■ Christine Kurdyla's claims are sufficient to withstand defendants' motion to dismiss for failure to state a claim. The Second Amended Complaint, while not specifically addressing the employer-employee relationship, does allege: (1) "Exxon is an 'employer' as defined by *N.J.S.A.* 10:5–1 *et seq.,*" (Second Am. Compl. Count I, ¶ 5); (2) Christine

---

to "the conventional master-servant relationship as understood by common-law agency doctrine." *Id.* at 322–23, 112 S.Ct. 1344 (quoting *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 739–40, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)). This common-law test, at least in the modern formulation used by the Court, emphasizes the alleged employer's right to control the manner and means of performance as well as:

> ... the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 323–24, 112 S.Ct. 1344 (quoting *Reid,* 490 U.S. at 751–52, 109 S.Ct. 2166). District courts within this Circuit have concluded that the *Darden* decision supplanted *Zippo* and its hybrid approach for purposes of the ADEA. *See, e.g., Stouch v. Brothers of the Order of Hermits of St. Augustine,* 836 F.Supp. 1134, 1139–40 (E.D.Pa. 1993); *Cox v. Master Lock Co.,* 815 F.Supp. 844, 845–46 (E.D.Pa.), *aff'd,* 14 F.3d 46 (3d Cir.1993). Whether *Zippo* has been supplanted is not directly relevant to this motion because both *Pukowsky* and *Carney* cited the *Zippo* test. *Carney,* 701 F.Supp. at 1098 (quoting *Zippo Mfg. Co.,* 713 F.2d at 37); *Pukowsky,* 312 N.J.Super. at 182–83, 711 A.2d at 404 (quoting *Franz,* 732 F.Supp. at 528 (citing *Zippo Mfg. Co.,* 713 F.2d at 37)). Even some courts adopting the *Darden* common-law approach have stated that "very little differ-

ence" exists between the two variations. *Stouch,* 836 F.Supp. at 1140 n. 5; *see also Frankel v. Bally, Inc.,* 987 F.2d 86, 90 (2d Cir.1993). *But see, e.g., Speen v. Crown Clothing Corp.,* 102 F.3d 625, 632 (1st Cir.1996) (stating that hybrid test cannot be amalgamated with common law approach).

16. See *supra* note 15 for a full list of these common-law factors.

17. The court in *Gryga v. Ganzman,* 991 F.Supp. 105 (E.D.N.Y.1998), referred to a "joint employer" test in addition to the "economic realities" standard, *id.* at 108. This test provides another means of determining whether or not a plaintiff is an employee of a defendant. *See, e.g., Graves v. Lowery,* 117 F.3d 723, 726–30 (3d Cir.1997). At least under some formulations, it appears similar to the *Zippo* and *Darden* approaches, *Zarnoski v. Hearst Business Comms., Inc.,* No. CIV. A. 95–3854, 1996 WL 11301, at *7–*8 (E.D.Pa. Jan. 11, 1996) (focusing on such factors as whether company exercises "day-to-day supervision"). The parties have not expressly addressed this "joint employer" test, though plaintiff does cite a case dealing with the similar "two masters" concept of the Federal Employers' Liability Act. (Pl.'s Br. in Opp. at 8 (citing *Pelliccioni,* 140 N.J.Super. at 198–99, 356 A.2d at 7–8).) Because the parties have not thoroughly briefed this issue and the Court has applied the very similar test developed in such decisions as *Zippo,* the Court does not apply the "joint employer" approach to this case. It does note, however, that the Third Circuit has stated that the "joint employer" determination involves "a careful factual inquiry," *Graves,* 117 F.3d at 729 (citations omitted), likely to be unsuitable for a motion to dismiss.

Kurdyla "commenced working at Exxon/Pinkerton as a life safety operator," (*id.* ¶ 3); (3) "Exxon Research is the ultimate parent corporation of Pinkerton," (*id.* ¶ 2); (4) "Exxon maintains control over the operations, business and practices of Pinkerton," (*id.*); and (5) Daryl Swiniski as well as the unknown defendants are "employees of Pinkerton & Exxon," (*id.* ¶ 6).[18] Because a person may be an employee of multiple employers, it is possible for Christine Kurdyla to have been an employee of both Exxon Research and Pinkerton. While plaintiff's allegations are not phrased in terms of the multi-factor test, we can reinterpret them in terms of the various test factors. For instance, the allegation that Exxon Research controls Pinkerton's activities leads to the inference that it controls plaintiff's activities as well. *Cf. Hebard*, 164 N.J.Super. at 83–84, 395 A.2d at 873 (stating in NJLAD case that volunteer firefighters are employees of township because of control exercised by township over fire company). This allegation therefore indicates that the important "right to control" factor has been satisfied. *See, e.g., Carney*, 701 F.Supp. at 1098 (quoting *Zippo Mfg. Co.*, 713 F.2d at 37) (citation omitted). Though these allegations could be insufficient to prove that Christine Kurdyla is an employee of Exxon Research, they are sufficient to overcome a Rule 12(b)(6) motion to dismiss because they prevent the Court from concluding that it clearly appears that plaintiff can prove no set of facts in support of her claim for relief. *Robb v. Philadelphia*, 733 F.2d 286, 290 (3d Cir.1984).[19]

NJLAD case law does not mandate a different conclusion. In both *Carney* and *Pukowsky*, the respective courts were not confronted with a motion to dismiss. The plaintiff in *Pukowsky* had appealed a directed verdict for the defendant. 312 N.J.Super. at 172, 711 A.2d at 399. In *Carney*, the defendant had moved for summary judg-

---

18. The allegations of Exxon Research's status as Pinkerton's parent corporation and Exxon Research's control over Pinkerton apparently indicate an argument that Exxon Research is liable for discrimination because Pinkerton is its subsidiary. Liability of parent companies for the actions of subsidiaries under the NJLAD, however, implicates a different inquiry in which the Court must determine whether or not the two entities actually constitute one integrated enterprise. *Marzano v. Computer Science Corp.*, 91 F.3d 497, 513–14 (3d Cir.1996); *Johnson v. Cook Composites & Polymers, Inc.*, No. CIV. A. 99–4916(JEI), 2000 WL 249251, at *3–*4 (D.N.J. Mar. 3, 2000). Plaintiff, however, does not assert this argument in its brief, and the Court deals with this motion as simply raising the question of whether plaintiff is an employee of Exxon Research. Even if the Court did reach the issue, a denial of the motion would be required because the determination of whether a parent corporation is liable for discrimination "involves a detailed fact driven analysis," and this characteristic makes granting a motion to dismiss before discovery inappropriate. *Johnson*, 2000 WL 249251, at *4.

19. This conclusion is not altered even if the Court considers other materials besides the Second Amended Complaint. The defendants submitted documents relating to the contract between Pinkerton and Exxon Research. These documents possibly indicate that Pinkerton and its employees are independent contractors of Exxon Research, at least under some of the test's factors. (*See, e.g.,* Aff. of Dennis Cecchini dated 7–5–00 Ex. A: Agreement between Pinkerton Security and Investigations and Exxon Research &

Engineering Co. dated 7–1–96 ¶ 22 (stating that Pinkerton is independent contractor and its personnel shall remain its employees at all times).)

Because these documents are not mentioned or even implicitly relied on in the Second Amended Complaint and plaintiff was not a direct party to them, it is uncertain whether they can even be considered under the exception permitting the evaluation on a motion to dismiss of "undisputably authentic documents expressly relied upon or integral to the pleadings." *Syncsort Inc. v. Sequential Software, Inc.*, 50 F.Supp.2d 318, 325 (D.N.J.1999) (citations omitted). Even if the Court may consider these contractual documents, it cannot conclude that Christine Kurdyla was an independent contractor. For instance, the intention of the parties as revealed in a contract is only one factor in the multi-part test and is not dispositive. *See, e.g., Kellam v. Snelling Personnel Services*, 866 F.Supp. 812, 816 n. 6 (D.Del.1994), *aff'd*, 65 F.3d 162 (3d Cir.1995). The documents also contain information indicating that plaintiff could have been an employee of Exxon Research. For example, the agreement provides that "Exxon" is responsible for paying for a medical plan for Pinkerton's employees. (Aff. of Dennis Cecchini dated 7–5–00 Ex. A: Attachment A–1: Specifications for Site Security Services at Exxon's Facilities dated 1–96 § 2.12F.) The payment of benefits is an express factor under the *Darden* test, *Darden*, 503 U.S. at 323–24, 112 S.Ct. 1344, and it was emphasized in *Carney*, 701 F.Supp. at 1100–01, and *Pukowsky*, 312 N.J.Super. at 183, 711 A.2d at 404–05. In any case, though they submit these contractual documents, defendants never make any argument based on them.

ment. 701 F.Supp. at 1095. In this case, however, plaintiff has not even begun discovery. Given the fact-intensive nature of the analysis and the number and range of factors to consider, this Court concludes that it is inappropriate to grant a motion to dismiss at this early stage. *Cf. Jean Anderson Hierarchy of Agents v. Allstate Life Ins. Co.,* 2 F.Supp.2d 688, 693 (E.D.Pa. 1998) (denying motion to dismiss due to absence of information in record from which Court could apply common-law agency test in Federal Labor Standards Act/Equal Pay Act case); *Hudson v. Radnor Valley Country Club,* No. CIV. A. 95–4777, 1996 WL 172054, at *4 (E.D.Pa. Apr. 11, 1996) (refusing to grant motion to dismiss even though Title VII plaintiffs did not allege that defendant controlled access to employment and then foreclosed employment by unlawful discrimination and did not allege facts from which one could reasonably conclude that defendant jointly employed plaintiffs); *Ahmad v. Independent Order of Foresters,* 81 F.R.D. 722, 728–29 (E.D.Pa.1979) (refusing to grant motion to dismiss in Title VII case), *aff'd,* 707 F.2d 1399 (3d Cir.1983).

The NJLAD cases also involved individual plaintiffs who were clearly independent contractors. The *Pukowsky* court held that a skating instructor was not an employee of a skating rink because she recruited her own students, exercised exclusive control over the classes, received no fringe benefits, and characterized herself as self-employed on her tax returns. 312 N.J.Super. at 183, 711 A.2d at 404–05. The plaintiff in *Carney* was a shoe salesperson who received only a commission, earned no employment benefits, was responsible for his own transportation and most types of expenses, and paid his own income and social security taxes. 701 F.Supp. at 1100. In this case, however, we are confronted with a complex situation in which the basic question which must be answered is whether a life safety operator or security guard employed by one company is also an employee of another corporation. This question is more complicated and fact-intensive than merely determining whether a skating teacher is an employee of a skating rink or whether a salesperson is an employee of a shoe company.[20]

### CONCLUSION

For the reasons stated above, the Court denies the motion to dismiss for failure to state a claim. This denial, however, does not affect the ability of either side to file a motion for summary judgment at the appropriate time.

---

**20.** A federal district court in New York did conclude that a security guard employed by a security agency and working at a homeless shelter run by the New York City Department of Homeless Services was not an employee of the city agency under Title VII and New York anti-discrimination laws. *Sowemimo v. D.A.O.R. Sec., Inc.,* 43 F.Supp.2d 477, 481, 489–90 (S.D.N.Y.1999). But, as was true with the two cases applying the NJLAD, this court dealt with a motion for summary judgment and not a motion to dismiss for failure to state a claim. *Id.* at 489–90; *see also Walker v. Correctional Med. Sys.,* 886 F.Supp. 515, 519–22 (W.D.Pa.1995) (finding prison nurse to be employee of county that possessed both right of control and termination).