**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1529-17T4

LESLIE BYRUM,

      Plaintiff-Appellant,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS, UNIVERSITY OF
MEDICINE & DENTISTRY OF NEW
JERSEY, ESTATE OF MARYSE
CICCIO, R.N., MAGIE CONRAD,
DNP, JOY LYNNE KWAP, R.N.,
and SERGEANT LESLIE FIGUEROA,

      Defendants-Respondents.

_____

        Argued September 17, 2019 – Decided October 22, 2019

        Before Judges Fisher, Accurso and Gilson.

        On appeal from the Superior Court of New Jersey, Law
        Division, Cumberland County, Docket No. L-0586-13.

        Robert John Hagerty argued the cause for appellant
        (Hagerty & Bland-Tull Law LLC, attorneys; Robert
        John Hagerty, on the briefs).

James Bucci argued the cause for respondents Rutgers, the State University of New Jersey, Magie Conrad, DNP, Joy Lynne Kwap, R.N., and the Estate of Maryse Ciccio, R.N. (Genova Burns LLC, attorneys; James Bucci and Casey Rutledge Langel, of counsel and on the brief).

Beonica McClanahan, Deputy Attorney General, argued the cause for respondents New Jersey Department of Corrections and Sergeant Leslie Figueroa (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Beonica McClanahan, on the brief).

PER CURIAM

Plaintiff is a licensed practical nurse who provided nursing services to inmates at facilities operated by the New Jersey Department of Corrections (DOC). She filed a complaint alleging, among other things, that she was retaliated against and ultimately fired in violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. She appeals from an August 18, 2017 order granting summary judgment to defendants and an October 17, 2017 order denying her motion for reconsideration. Having reviewed the parties' arguments in light of the record and law, we affirm.

I.

Plaintiff worked for several entities that contracted with DOC to provide medical and dental services to inmates at DOC facilities. In 2008, plaintiff was

hired by University Corrections Health Care (UCHC), which was part of the University of Medicine and Dentistry of New Jersey (UMDNJ). In 2013, UMDNJ merged into Rutgers, the State University of New Jersey (Rutgers). Accordingly, we refer to Rutgers as plaintiff's employer.

The contract between Rutgers and DOC stated that Rutgers was responsible for hiring, employing, compensating, and firing the personnel who provided medical and dental services to inmates. The contract also stated that DOC had the right to deny access to or ban from DOC facilities any Rutgers employee, provided DOC gave Rutgers notice of the reasons for the denial or ban.

When plaintiff began her employment with Rutgers, she received and acknowledged receipt of a job description for her position. That job description stated:

> Must be approved by the Department of Corrections (DOC) and adhere to all DOC requirements. Employees will be subject to and must comply with all security regulations and procedures of [DOC] and the assigned facility . . . . Violations of [DOC policies] and/or being banned by [DOC] to work at a [DOC] facility are grounds for a disciplinary action and potential termination.

Plaintiff acknowledged at her deposition that she was aware that she had to abide by DOC's security policies, including its ban on cigarettes. Moreover,

plaintiff understood that if she was banned from DOC facilities, her employment might be terminated.

In 2011, plaintiff was working at South Woods State Prison. On March 27, 2011, she sent an email to Rutgers Director of Nursing, reporting a medical error committed by her supervisor, Maryse Ciccio. On the same day, plaintiff discovered and reported that the form used to report medication errors had an incorrect fax number. Thus, when plaintiff sent out that form by fax, she received a return fax informing her that it was sent to the wrong number and that sending the fax was a potential violation of the Health Insurance Portability and Accountability Act (HIPAA).

The following day, on March 28, 2011, Ciccio acknowledged that she mistakenly gave an inmate two tablets instead of one tablet. Plaintiff claims that after reporting Ciccio, Ciccio confronted her and struck her on the back. Thereafter, plaintiff filed a criminal complaint in municipal court against Ciccio for harassment and assault. In June 2011, the municipal court entered a no-contact order against Ciccio. Rutgers independently investigated plaintiff's report that Ciccio had struck her. Rutgers determined that Ciccio had touched plaintiff and issued Ciccio a written warning.

A-1529-17T4

On September 12, 2011, plaintiff reported that Ciccio attempted to cut her off in the parking lot and later tried to bump plaintiff and knock her bag off her shoulder. Rutgers investigated those allegations and, after interviewing various witnesses, determined that the incidents did not happen as described by plaintiff.

Thereafter, Rutgers attempted to transfer plaintiff from South Wood to Southern State Prison. Plaintiff, however, requested that she not be transferred to that facility because her former husband worked there. Rutgers then tried to transfer plaintiff to Bayside State Prison, but an administrator at DOC objected because of past conduct involving plaintiff and two people who worked at Bayside.

Based on the concerns raised by the DOC administrator, DOC banned plaintiff from all its correctional facilities. In response, Rutgers notified plaintiff that her employment would be terminated. Before the termination went into effect, however, plaintiff took a medical leave. While plaintiff was out on leave, her union consulted with Rutgers and, after DOC agreed to lift the ban, Rutgers rescinded plaintiff's termination. Plaintiff was on medical leave from September 2011 until April 2012. When she returned to work, plaintiff was assigned to work at Bayside State Prison.

A-1529-17T4

In July 2013, plaintiff filed a complaint against Rutgers, DOC, Ciccio, and two other individual nursing supervisors. Plaintiff made a number of claims, including claims of retaliation in violation of CEPA, violations of the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2, and violations of her federal constitutional rights.

On May 9, 2014, plaintiff attempted to enter Bayside State Prison. As plaintiff was passing through a security check point, a DOC corrections officer, Leslie Figueroa, conducted a pat down search of plaintiff. Figueroa discovered a loose cigarette in plaintiff's possession and reported that incident. DOC then conducted an investigation. As part of that investigation, plaintiff admitted that she had two cigarettes on her person when she attempted to enter the facility. In that regard, plaintiff acknowledged that Officer Figueroa had found one cigarette, but she also admitted that she had a second cigarette in her pants when she attempted to enter Bayside State Prison.

DOC determined that plaintiff violated its contraband policy, which prohibited cigarettes in DOC facilities. Accordingly, DOC permanently banned plaintiff from all of its facilities. In May 2014, Rutgers, in turn, terminated plaintiff's employment.

Plaintiff, thereafter, amended her complaint to allege that her termination violated CEPA and CRA. After extensive discovery (including a deposition of plaintiff), DOC filed an unopposed motion for summary judgement in late 2017. The trial court granted summary judgment in favor of the DOC in March 2017.

Plaintiff moved to vacate the March 2017 order, and the trial court allowed plaintiff to submit opposition to the summary judgment motion. The remaining defendants, including Rutgers, filed a separate motion for summary judgment in June 2017. All of the motions were then briefed and the trial court heard oral arguments. On August 18, 2017, the trial court issued a written decision and entered an order denying plaintiff's motion to vacate the earlier summary judgment entered in favor of DOC and granting summary judgment in favor of all other defendants.

The trial court held that the majority of plaintiff's CEPA claims were time-barred under CEPA's one-year statute of limitations. With regard to plaintiff's termination claim, the trial court found that plaintiff had not established a causal connection between her alleged whistleblowing activity in 2011 and her termination in 2014. The trial court also found that Rutgers had set forth a legitimate reason for discharging plaintiff and plaintiff had no evidence that Rutgers' reason was pretextual.

A-1529-17T4

II.

Plaintiff now appeals from the orders granting summary judgment in favor of defendants and the order denying her motion for reconsideration. On appeal, plaintiff makes four arguments, contending that (1) she demonstrated a prima facie case of retaliation under CEPA; (2) her CEPA claims are not time-barred; (3) there is evidence that Rutgers' reason for terminating her is pretextual and, therefore, her CEPA claims should be presented to a jury; and (4) plaintiff was jointly employed by DOC and Rutgers.

We are not persuaded by any of plaintiff's arguments. We will begin our analysis by identifying our standard of review. Next, we will analyze plaintiff's argument that she was employed by both Rutgers and DOC. Thereafter, we will analyze her CEPA claims.

Initially, we note that on this appeal plaintiff has only presented arguments concerning her CEPA claims. At oral argument before us plaintiff acknowledged that she was not pursuing her CRA claims. Moreover, since she has raised no arguments concerning her other claims, we deem those claims abandoned. See N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div 2015) ("An issue that is not briefed is deemed waived upon

8

appeal.") (citing Fantis Foods v. N. River Ins. Co., 332 N.J. Super. 250, 266-67 (App. Div. 2000)).

A.    Our Standard of Review

We review a trial court's decision granting summary judgment de novo, using the same standard the trial court applies. Townsend v. Pierre, 221 N.J. 36, 59 (2015) (citing Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014)).  A court should grant summary judgment if the record establishes there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).

"An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'"  Grande v. Saint Clare's Health Sys., 230 N.J. 1, 23-24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).  Furthermore, "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2."  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  We owe no special deference to the motion court's legal analysis or its interpretation of a statute.

RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Hitesman

v. Bridgeway, Inc., 218 N.J. 8, 26 (2014).

B.    Plaintiff's Employer

To determine whether an individual is an employee for purposes of CEPA,

courts apply a twelve-factor test.  D'Annunzio v. Prudential Ins. Co. of Am., 192

N.J. 110, 120-21 (2007); Pukowski v. Caruso, 312 N.J. Super. 171, 181-82 (App.

Div. 1998).  The factors to be considered are:

> (1)    The employer's right to control the means and
> manner of the worker's performance; (2) the kind of
> occupation–supervised or unsupervised; (3) skill; (4)
> who furnishes the equipment and workplace; (5) the
> length of time in which the individual has worked; (6)
> the method of payment; (7) the manner of termination
> of the work relationship; (8) whether there is annual
> leave; (9) whether the work is an integral part of the
> business of the "employer;" (10) whether the worker
> accrues retirement benefits; (11) whether the
> "employer" pays [S]ocial [S]ecurity taxes; and (12) the
> intention of the parties.
>
> [D'Annunzio, 192 N.J. at 120-21]

"'The most important of these factors is the first, the employer's right to

control the means and manner of the worker's performance.'"  Thomas v. Cty. of

Camden, 386 N.J. Super. 582, 595 (App. Div. 2006) (quoting Chrisanthis v. Cty.

of Atlantic, 361 N.J. Super. 448, 455 (App. Div. 2003)).  If a court is satisfied

10

that no rational fact finder could determine that a plaintiff was an employee, then summary judgment is appropriate. Chrisanthis, 361 N.J. Super. at 464.

Plaintiff was a licensed nurse practitioner who provided medical services to inmates. The record establishes that Rutgers exercised control over the manner of plaintiff's work. Plaintiff's nursing activities were supervised by other Rutgers employees. Moreover, plaintiff's skills as a nurse were not the type of skills that a normal DOC employee possesses. Critically, plaintiff was directly employed by and compensated by Rutgers. Rutgers was also the entity that determined whether plaintiff would be fired. Indeed, plaintiff acknowledged at her deposition that she was employed by Rutgers and not DOC. Consequently, consideration of all twelve factors establishes that plaintiff was not an employee of DOC for purposes of CEPA.

C.    The CEPA Claims

CEPA is a remedial statute that promotes New Jersey's public policy to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Hitesman, 218 N.J. at 27 (first quoting Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 555 (2013); then quoting Dzwonar v. McDevitt, 177 N.J. 451, 461 (2003)). Accordingly, the statute "shields an employee who

objects to, or reports, employer conduct that the employee reasonably believes to contravene the legal and ethical standards that govern the employer's activities." Ibid.; see also N.J.S.A. 34:19-3.

To demonstrate a prima facie CEPA violation, a plaintiff must establish:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
>
> (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c);
>
> (3) an adverse employment action was taken against him or her; and
>
> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015) (quoting Dzwonar, 177 N.J. at 462); accord Puglia v. Elk Pipeline, Inc., 226 N.J. 258, 280 (2016).]

"[T]he court decides, as a matter of law, whether or not a plaintiff has carried his or her burden of demonstrating the elements of [a] prima facie case . . . ." Tartaglia v. UBS PaineWebber Inc., 197 N.J. 81, 125 (2008).

In evaluating whether a CEPA plaintiff has offered sufficient evidence to prove his or her claim, New Jersey courts apply the three-step burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802

12

(1973).  See Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 90 (2012)

(citing Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 97 (1990)).  Under that

framework, once plaintiff has satisfied her or his initial burden of showing the

elements of a prima facie case,

> [t]he burden of production then shifts "to the employer
> to articulate some legitimate, nondiscriminatory
> reason" for the adverse employment action.  Once the
> employer does so, "the presumption of retaliatory
> discharge created by the prima facie case disappears
> and the burden shifts back to the [employee]."  At that
> point, the employee must convince the fact finder that
> the employer's reason was false "and that [retaliation]
> was the real reason."  The ultimate burden of proof
> remains with the employee.
>
> [Ibid. (second and third alterations in original)
> (citations omitted) (first quoting McDonnell Douglas
> Corp., 411 U.S. at 802; then quoting Blackburn v.
> United Parcel Serv., Inc., 179 F.3d 81, 92 (3d Cir.
> 1999)).]

CEPA has a one-year statute of limitations.  In that regard, CEPA states:

"Upon a violation of any of the provisions of this Act, an aggrieved employee

or former employee may, within one year, institute a civil action in a court of

competent jurisdiction."  N.J.S.A. 34:19-5(a).

Here, summary judgment was properly granted on the CEPA claims for

three reasons: (1) certain of plaintiff's claims are time-barred; (2) she has not

established a causal connection between her whistleblowing activities in 2011

13

and her termination in 2014; and (3) Rutgers established a legitimate, non-discriminatory reason for plaintiff's termination and she has produced no evidence that Rutgers' reason was pretextual.

1.    The CEPA Claims That Are Time-Barred

Plaintiff filed her original complaint on July 2, 2013.  Plaintiff alleges retaliation in March 2011, September 2011, and April 2012.  She also alleges that she was terminated in May 2014, in retaliation for her whistleblowing activities.

Considering plaintiff's allegations in the light most favorable to her, there is no connection linking the retaliation she alleges between March 2011 and April 2012, and her termination in May 2014.  In other words, the termination was discreet from the earlier alleged retaliation.  Consequently, as the earlier retaliation ended in April 2012, those claims of retaliation are time-barred.

2.    The Lack of Causal Connection

As noted, plaintiff was terminated in May 2014, after she brought contraband cigarettes into a prison facility.  Plaintiff has presented no evidence that her termination was causally connected to her 2011 whistleblowing activity of reporting a medical error.  When, as here, there is no temporal proximity, the employee "must set forth other evidence to establish the causal link."  Young v.

14

<u>Hobart West Group</u>, 385 N.J. Super. 448, 467 (App. Div. 2005). The record is devoid of any fact from which a reasonable jury could find that plaintiff's termination two and a half years after her alleged whistleblowing activity was causally connected to that activity.

3.    There Has Been No Showing of Pretext

At her deposition, plaintiff acknowledged that before May 2014, she was aware that DOC had a policy prohibiting cigarettes in prison facilities. Plaintiff also acknowledged that bringing contraband into a prison facility could result in a permanent ban from DOC facilities. Finally, plaintiff understood that if she was banned from all DOC facilities, her employment with Rutgers would be terminated.

Rutgers established that it terminated plaintiff after she was banned for bringing contraband cigarettes into a DOC facility. Plaintiff offered no evidence from which a jury could conclude that Rutgers' non-discriminatory reason for the termination was pretextual.

Plaintiff argues that there are four pieces of evidence that would allow a jury to determine that Rutgers' stated reason for her termination was pretextual. First, she contends that Sergeant Figueroa, the DOC corrections officer who frisked her, was "gunning" for plaintiff. Second, she argues that she did not

actually violate DOC's contraband policy. Third, she contends that there was collusion between Rutgers and DOC and that plaintiff was targeted after her 2011 whistleblowing activities. Finally, plaintiff contends that Maggie Conrad, the Rutgers official who explained the reason for her termination, provided questionable testimony.

The record does not support any of plaintiff's arguments. There is no evidence that Figueroa knew plaintiff prior to finding a cigarette on her person and there is no evidence that Figueroa had knowledge about plaintiff's whistleblowing activities. Instead, the evidence in the record establishes that DOC had a policy prohibiting cigarettes in its facilities and plaintiff violated that policy. Indeed, plaintiff admitted that she had two cigarettes tucked inside her pants on May 9, 2014, when she attempted to enter Bayside State Prison.

The evidence in the record also establishes that Rutgers played no role in DOC's investigation or its decision to ban plaintiff from its facilities in May 2014. Consequently, there is no support for plaintiff's claims that Rutgers and DOC targeted plaintiff.

Finally, plaintiff contends that Maggie Conrad offered "contradictory" testimony concerning plaintiff's transfer in 2011, and that that testimony could

lead a fact finder to believe that the termination in 2014 was pretextual. That argument is not supported by fact or logic.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1529-17T4