**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3601-22

JAKE STOUCH,

     Plaintiff,

and

KRISTINE BODNAR,

     Plaintiff-Appellant,

v.

DEPARTMENT OF CHILD
PROTECTION AND PERMANENCY,
CENTER FOR FAMILY SERVICES,
GWEN WEBER, JUNIATA FARR,
MARYANN FURPHY, TIFFANY
MCILHENNY, DEBORAH JOHNSON,
THERESE BENYOLA and MARION
MCLAURIN,

     Defendants-Respondents,

and

IAN PALUMBO,

     Defendant.

_____

Argued January 7, 2025 – Decided May 7, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0151-19.

Matthew A. Luber argued the cause for appellant (McOmber McOmber & Luber, PC, attorneys; Matthew A. Luber, on the briefs).

Jemi G. Lucey argued the cause for respondents Department of Child Protection and Permanency, Gwen Weber, Juanita Farr, Maryann Furphy and Tiffany McIlhenny (Greenbaum, Rowe, Smith & Davis, LLP, attorneys; Jemi G. Lucey and Maja M. Obradovic, of counsel and on the brief; Joel Clymer, on the brief).

Timothy R. Bieg argued the cause for respondents Center for Family Services, Deborah Johnson, Therese Benyola and Marion McLaurin (Madden & Madden, PA, attorneys; Timothy R. Bieg, on the brief).

PER CURIAM

This case arises from alleged workplace sexual harassment committed against plaintiff Kristine Bodnar. She appeals from a January 10, 2023 Law Division order on reconsideration granting summary judgment in favor of defendants Division of Child Protection and Permanency (DCPP) and Center for

A-3601-22

Family Services (CFS).[1]  The trial court dismissed with prejudice plaintiff's claims of disparate treatment, gender discrimination, hostile work environment, and retaliation brought under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1.  After reviewing the record in light of the parties' arguments and governing legal principles, we affirm the summary judgment dismissal of the LAD suit against DCPP because that agency did not employ plaintiff and was not her joint employer.  We reverse the grant of summary judgment with respect to CFS—plaintiff's employer—because there are material facts in dispute that pertain to its liability under the LAD.

I.

We discern the following pertinent facts and procedural history from the record.

---

[1]  For the sake of simplicity and succinctness, we include all individual defendants employed by DCPP when we refer to defendant DCPP.  So too we include all individual defendants employed by CFS when we refer to defendant CFS.

3

A.

The Relevant Actors

CFS employed plaintiff from 2016 to 2019 as a certified alcohol and drug counselor at DCPP's Burlington east office. CFS is a non-profit social services provider, offering services across New Jersey and regularly works with state and local public service agencies. See Center For Family Services, https://www.centerffs.org/ (last visited Jan. 1, 2025). Ian Palumbo, a DCPP caseworker/senior investigator, was assigned to the same office until his transfer around August 2019 to DCPP's Burlington west office.

Co-plaintiff Jake Stouch[2] was a CFS caseworker assigned to the permanency unit at DCPP's Burlington east office. Deborah Johnson, Therse Benyola, and Mario McLaurin are CFS employees with supervisory authority over plaintiff. McLaurin was the CFS Director of Human Resources (HR).

Juanita Farr, MaryAnn Furphy, and Tiffany McIlhenny are DCPP employees. Farr supervised Palumbo while he was assigned to the Burlington east office. Furphy was the DCPP local office manager of the Burlington east office and supervised Farr and Gwen Weber. McIlhenny, a DCPP casework supervisor, supervised Stouch from around June or September 2019 until

---

[2] Stouch is not a party to this appeal.

A-3601-22

Stouch's suspension and termination in December 2019. McIlhenny reported directly to Weber, who supervised casework supervisors.

Plaintiff testified in her deposition that she worked very closely with DCPP caseworkers and their supervisors, which included staff meetings with DCPP employees approximately every four months. She acknowledged her position as a full-time CFS employee in the following answer:

> Q[uestion:] Why don't you explain to me what it is you did for CFS during that time period.
>
> A[nswer:] Yeah. So the caseworker, if they had a case that involved substance abuse, they would send it to . . . [another CFS worker]. [The CFS worker] would schedule the appointment, then . . . I would have a schedule, I would see the client, I would have to assess them if they had a substance abuse issue. If they did have a substance abuse issue, I would have to recommend the correct level of care, and then just report to the caseworkers or the casework supervisors on what was going on with the cases.

Plaintiff also testified that if she was seeking sick time, personal time, vacation, or needed to take off work for any reason, she would report to CFS employee Johnson.

Palumbo also testified that he worked closely with plaintiff. In his deposition, Palumbo described plaintiff's position in relation to his job, stating:

5

Q[uestion:] And what was her position? What was the circumstances by which you got to know [plaintiff], what did she do for [DCPP] or for CFS?

A[nswer:] . . . . [W]e would make a referral to them with our case history, what's going on currently with the family related to substance abuse. We would send it over to them. We would often conference the case and the CFS worker would then interview the client and make recommendations.

DCPP and CFS had a vendor service agreement designating CFS as the "provider agency." Section 5.14 of the agreement addresses independent employer status, stating:

> Employees of [p]rovider [a]gencies that [c]ontract with the [DCPP] are employees of the [p]rovider [a]gency, not the State.
>
> In accordance with the National Labor Relations Act, 29 U.S.C.A. 152(2) and [s]tate law, N.J.S.A. 34:13A-1 et seq., [p]rovider [a]gencies are independent, private employers with all the rights and obligations of such, and are not political subdivisions of [DCPP].
>
> As such, the [p]rovider [a]gency acknowledges that it is an independent [p]rovider, providing services to [DCPP], typically through a contract for-services agreement. As independent contractors, [p]rovider [a]gencies are responsible for the organization's overall functions that include the overseeing and monitoring of its operations, establishing the salary and benefit levels of its employees, and handling all personnel matters as the employer of its workers . . . .

6

The [p]rovider [a]gency acknowledges its relationship with its employees as that of employer. While [DCPP] has an adjunct role with [p]rovider [a]gencies through regulatory oversight and ensuring contractual performance, the [p]rovider understands that [DCPP] is not the employer of a [p]rovider [a]gency's employees.

The [p]rovider [a]gency further acknowledges that while [DCPP] reimburses [p]rovider [a]gencies for all allowable costs under the [c]ontract, this funding mechanism does not translate into [DCPP] being responsible for any of the elements of any collective bargaining agreements into which [p]rovider [a]gencies may enter. Moreover, each [p]rovider [a]gency understand[]s that it is responsible for funding its own programs and is not limited to the amount of funding provided by [DCPP], and, in fact, is encouraged to solicit non-[s]tate sources of funding, whenever possible.

B.

The Relevant Conduct

Plaintiff alleges Palumbo began sexually harassing her in March or April 2018. Palumbo made comments regarding her physical appearance and attractiveness and obtained her phone number under the pretense of work-related business but then used it to make inappropriate comments via phone and text. In one text message, Palumbo asked plaintiff, "do you mind wearing stuff like large sweatshirts and parkas?" followed by "[because] I can't concentrate asshole." Plaintiff described how the harassment escalated to physical touching

7

of her back and hair at work and invading her personal space by standing close to her. In addition, she testified to instances where Palumbo repeatedly made comments, jokes, and insinuations that she had a sexual relationship with Stouch.

On November 20, 2018, plaintiff filed a discrimination complaint with the Office of Equal Employment Opportunity (EEO) alleging discrimination based on Palumbo's sexual harassment. Stouch forwarded plaintiff's EEO complaint a few days later to DCPP. The EEO opened an investigation into the sexual harassment allegations pursuant to EEO policy.

On November 26, 2018, plaintiff called her immediate supervisor, Johnson, to report the problems with Palumbo. Johnson reportedly responded that plaintiff had not filed a formal complaint and that she would be transferred and Benyola would follow up with her. Benyola called plaintiff the next day and scheduled plaintiff's meeting with McLaurin for November 29, 2018. At the meeting, McLaurin informed plaintiff she was going to be transferred to DCPP's Camden office. Plaintiff claims that at this meeting, Benyola informed her for the first time of complaints made about plaintiff's clothing.

On December 6, 2018, plaintiff was transferred to the Camden office. Plaintiff claims that she was "set up to fail" because she received no training to

facilitate the transition and that DCPP and CFS employees were discussing her complaint.

On December 7, 2018, plaintiff emailed to McLaurin about her transfer, Palumbo's sexual harassment, and the anxiety and stress she felt since complaining. Plaintiff informed McLaurin that she would be consulting with a doctor. Plaintiff took a leave of absence and never returned to the Camden office. Her employment with CFS ended sometime after.

On April 10, 2019, plaintiff received a letter from the EEO concerning its investigation. The letter stated:

> [Y]ou alleged that [Palumbo] sent you inappropriate text messages between March 2018 to November 2018. These messages also included inappropriate comments about you and [Stouch] that were of a sexual nature.
>
> [DCPP] does not condone or tolerate any form of discriminatory behavior in the workplace. Therefore, pursuant to the New Jersey State Policy Prohibiting Discrimination in the Workplace ("State Policy") a zero-tolerance policy, the Office of EEO conducted a thorough investigation.
>
> The investigation confirmed that [Palumbo] did send inappropriate text messages to you. These messages also included inappropriate comments about you and [Stouch].
>
> Based on the results of the investigation relating to this allegation, it was substantiated that there was a

violation of the State Policy. Consequently, appropriate administrative action will be taken.

After appealing a four-day suspension, Palumbo and DCPP negotiated a three-day suspension for engaging in sexual harassment. He was transferred to the Burlington west office. During his deposition, Palumbo admitted that he had knowledge of DCPP's zero-tolerance policy for sexual harassment. After his suspension, Palumbo confirmed that he did not receive any remedial anti-sexual harassment training. Palumbo reported that he was later promoted in 2019.

Plaintiff reported the alleged ongoing retaliation to her medical provider. Among plaintiff's claims, she alleges that her doctor, Dr. Joseph Sireci, constructively discharged her from her CFS employment through an August 30, 2019 note advising that the CFS workplace would be a horrible environment for future employment.

## C.

### The LAD Litigation

In January 2019, plaintiff and Stouch[3] filed a LAD action against DCPP, CFS, Palumbo,[4] Weber, Farr, Johnson, Benyola, and McLaurin. Plaintiff

---

[3] The trial court decided Stouch's claims in the same oral decision.

[4] Palumbo, while named as an individual defendant, is not a party to this appeal.

claimed disparate treatment, sexual harassment, and hostile work environment based on gender discrimination, and retaliation/improper reprisal under N.J.S.A. 10:5-1, 12(e), and 12(d). Plaintiff filed an amended complaint on February 20, 2020 which included claims of constructive discharge and added DCPP employees Furphy and McIlhenny as defendants.

After discovery, defendants filed for summary judgment. DCPP primarily argued that it was not plaintiff's employer, or joint employer, pursuant to the twelve-factor test set forth in Pukowsky v. Caruso, 312 N.J. Super. 171, 180 (App. Div. 1998). DCPP also argued that plaintiff's discrimination, harassment, and retaliation claims were factually and legally deficient and that it was entitled to a prompt and remedial defense to plaintiff's LAD claims under Bouton v. BMW of N. Am., Inc., 29 F.3d 103 (3d Cir. 1994). Further, DCPP argued that plaintiff's aiding and abetting claims against the individual DCPP employees should be dismissed for the same reasons that required dismissal of the LAD suit against the agency.

The trial court heard oral argument on August 30 and 31, 2022. The court denied defendants' motions, explaining in its oral decision that genuine disputes of material facts precluded summary judgment. With respect to the hostile work environment claim, the trial court found "a genuine issue as to whether

[plaintiff] was an employee of DCPP, and this fact should be determined by the fact finder. Not so much that the employee but . . . of her employment in the control of DCPP" and "an issue of fact . . . with [CFS][.] . . . [I]t deals mainly with . . . the control factor of . . . what control that CFS had in this . . . environment."

On September 28, 2022, both defendants filed motions to reconsider the trial court's denial of their summary judgment motions. Oral argument was held on December 19, after which the trial court granted defendants' reconsideration motion and dismissed plaintiff's claims against DCPP and CFS with prejudice. The court noted that nothing had changed with respect to the parties' arguments but acknowledged that it "may have made a mistake."

During oral argument, the trial court asked plaintiff's attorney a series of questions focused on the scope of CFS's control over Palumbo, the DCPP employee who committed the sexual harassment. Part of this colloquy went as follows:

> THE COURT: Is there anything in the record that [CFS] had control to terminate Palumbo?
>
> [PLAINTIFF'S COUNSEL]: I don't think they could have said, [Palumbo], I'm firing you from your employment at DCPP, but that is not the issue. The issue is retaliation by her own employer by transferring her to another place against her will. And, Judge,

permanently. Never brought her back. Never said it was temporary. Never asked her if there was another option. Never said we've talked to DCPP and said we're going to put these measures in place to make sure he doesn't harass you again. We're going to give you a number of options in the event that he does something again in the workplace. We're going to investigate it and get a written record of what exactly occurred here, okay?

In ordering summary judgment in favor of CFS, the trial court stated that it "can't find that a rational fact finder under the statements set forth in the summary judgment could find that the CFS employer could be found liable for an LAD claim against their employee Bodnar." The court explained that:

> And as noted in Lehmann[v. Toys 'R' Us, Inc., 132 N.J. 587 (1993)] and as noted in Chrisanthis [v. County of Atl., 361 N.J. Super. 448 (App. Div. 2003)] as I just cited to, and as admitted on the record, they did not control Palumbo. So whether or not [plaintiff] was satisfied with what evasive actions they took, I can't find as a matter of law that the actions taken were not the appropriate ones in the context of the facts of this matter. I can't find that, as [plaintiff] projects, that they were hand-in-glove employers. I can't find that, as [plaintiff] suggests, that the CWA cases are appropriate here as they were collective bargaining cases. Yet I'm guided by the satisfaction of the [twelve] factors as set forth in Pukowsky[, 312 N.J. Super. at 171,] that I don't believe [plaintiff] meets as it pertains to whether or not [DCPP and CFS] were joint employers. [CFS] could not have been found to have control over [DCPP individual defendants] in an effort to apply the LAD claim for improprieties by Palumbo and the claims alleged to deal with [DCPP].

13

The trial court then addressed plaintiff's LAD claims against DCPP, beginning by stating, "[t]he next step is to look at the relationship between [plaintiff] and [DCPP]. [Plaintiff]'s claim is that somehow [DCPP] is a place of public accommodation. I don't know how I can find a public accommodation in the context of the facts of this case." The trial court continued, "I again have to find that somehow there was a closer nexus between [DCPP] and Palumbo with [plaintiff] that I don't believe is satisfied here." The court thereupon granted summary judgment in favor of DCPP.

This appeal followed. Plaintiff contends that she demonstrated a prima facie case of hostile work environment and retaliation, presenting jury questions. She argues that the trial court initially had properly denied defendants' motion for summary judgment but erred in reconsidering that decision and reversing course. Plaintiff further contends that defendants are joint employers and that a jury must decide if they breached the duty to maintain a workplace free from harassment, discrimination, and retaliation.

II.

We first address plaintiff's contention the trial court erred in dismissing her complaint against DCPP. She argues DCPP was a joint employer and that if that conclusion is not evident as a matter of law, DCPP's status as a joint

employer is a factual question that cannot be decided on summary judgment.

She also asserts that:

> [CFS] had an obligation as [plaintiff's] employer to provide her with a workplace free of discrimination, regardless of whether Palumbo works for them or not. Palumbo and [plaintiff's] work was inextricably intertwined as they shared the same office space, and CFS employees perform many services for DCPP investigators on their cases. This relationship between CFS and DCPP is the reason why [plaintiff] was subjected to DCPP's investigation upon the issuance of [plaintiff's] and Stouch's complaints. At the very least, whether DCPP had significant control of CFS's workplace and its' employees is a jury question.

In addition, plaintiff contends "the fact that DCPP outsources essential services to contractors is not dispositive on whether it owes [plaintiff] a duty here."

Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We "accord no 'special deference' to the 'trial court's interpretation of the law and the legal consequences that flow from established facts.'" Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234

N.J. 403, 414-15 (2018) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A non-moving party "cannot defeat a motion for summary judgment merely by pointing to any fact in dispute." Brill, 142 N.J. at 529. Thus, "once the moving party presents sufficient evidence in support of the motion, the opposing party must 'demonstrate by competent evidential material that a genuine issue of fact exists[.]'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 479-80 (2016) (alteration in original) (quoting Robbins v. Jersey City, 23 N.J. 229, 241 (1957)).

We are not persuaded the trial court erred in applying the twelve-part Pukowsky test for determining whether a worker is an employee or an independent contractor. That test considers the following factors:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation—supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer;" (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.
>
> [Pukowsky, 312 N.J. Super. at 182-83.]

16

"[T]he Pukowsky test requires more than the listing of factors on either side of the ledger with victory going to the side garnering the most factors." Chrisanthis, 361 N.J. Super. at 456. "The most important of these factors is the first, the employer's right to control the means and manner of the worker's performance." Id. at 455 (quoting Franz v. Raymond Eisenhardt & Sons, Inc., 732 F. Supp. 521, 528 (D.N.J. 1990)). However, the importance of each factor varies depending on the circumstances of each case. Id. at 456. Therefore, "[a] 'principled application' of the factors and a consideration of which factors are more important under the peculiar circumstances of each case are required." Ibid. If a court is satisfied no rational fact finder could determine that a plaintiff was an employee, then summary judgment is appropriate. See id. at 464, 466.

Here, although plaintiff may have worked closely with DCPP and its supervisors in their office, she has not presented evidence to show DCPP supervised her or had the right to control the manner or means of her work. She has not presented evidence that DCPP had input into what skills plaintiff could use in accomplishing her job duties. During her deposition, plaintiff admitted that she solely went to CFS for leave requests and that CFS had the ability to both terminate or transfer her. She presented no evidence that DCPP paid social security taxes for her. Rather, the record shows plaintiff received her pay and

17

job benefits from CFS and did not accrue any benefits with DCPP, including retirement benefits. We thus concur with the trial court's conclusion that DCPP was neither her employer nor joint employer.

Nor are we persuaded by plaintiff's contention that "[a]t a minimum, CFS and DCPP each constitute a 'place of public accommodation' as set forth in N.J.S.A. 10:5-5(l)" and as such are liable to plaintiff. Our review of the record confirms that plaintiff never asserted a cause of action under the LAD's public accommodation provision in any of her complaints. The trial court thus correctly dismissed this argument. Furthermore, we are not persuaded that in the present circumstances, DCPP is not a place of public accommodation within the meaning of the statute. See Doe v. Div. of Youth & Fam. Servs., 148 F. Supp. 2d 462, 496 (D.N.J. 2001). Cf. Thomas v. County of Camden, 386 N.J. Super. 582 (App. Div. 2006); Ptaszynski v. Uwaneme, 371 N.J. Super. 333, 396 (App. Div. 2004).

Because we hold that plaintiff was not a DCPP employee for purposes of the LAD, we need not consider DCPP's alternate contention that the record supports the existence of an irrefutable prompt and remedial defense. See Bouton, 29 F.3d at 107; Payton v. N.J. Tpk. Auth., 292 N.J. Super. 36, 45-47 (App. Div. 1996).

To the extent we have not addressed them, any remaining arguments raised by plaintiff with respect to DCPP's liability under the LAD lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

III.

We next turn to plaintiff's contention that the trial court erred in dismissing her complaint against CFS. There is no dispute that plaintiff was a CFS employee. The trial court assumed that because Palumbo was not a CFS employee, it had no control over him; it could not discipline him or remove him from the Burlington east office. While true, that circumstance does not mean that CFS was had no obligation to protect its employee from sexual harassment committed by a DCPP employee at plaintiff's worksite. The fact that Palumbo did not work for CFS did not necessarily preclude CFS from collaborating and cooperating with DCPP—which had supervisory authority over Palumbo—to ensure a safe, harassment-free workplace for plaintiff. Furthermore, CFS's asserted lack of control over Palumbo does not foreclose plaintiff's retaliation claims asserting, for example, that CFS allegedly transferred her without her assent.

The critical issue here is whether there are material facts in dispute that make summary judgment inappropriate. Turning to the prima facie standards

19

under the LAD, our Supreme Court has adopted the three-part McDonnell Douglas[5] analysis "as the method for analyzing LAD claims." El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 166 (App. Div. 2005). That test provides that:

> (1) the plaintiff must come forward with sufficient evidence to constitute a prima facie case of discrimination; (2) the defendant then must show a legitimate non-discriminatory reason for its decision; and (3) the plaintiff must then be given the opportunity to show that [the] defendant's stated reason was merely a pretext or discriminatory in its application.
>
> [Ibid. (citing Dixon v. Rutgers, the State Univ. of N.J., 110 N.J. 432, 442 (1988)).]

A hostile work environment claim requires consideration of "the totality of the circumstances." Id. at 178. To establish a hostile work environment claim under the LAD, moreover, a plaintiff "must show that 'the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive.'" Griffin v. City of E. Orange, 225 N.J. 400, 413-14 (2016) (quoting Lehmann, 132 N.J. at 603-04).

---

[5] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Given the deposition testimony and the EEO investigative report, the record established that a rational factfinder could conclude that plaintiff was the victim of severe and pervasive sexual harassment in the workplace in the form of unwelcome sexual touching and comments over the span of months from a male DCPP employee, Palumbo. See Lehmann, 132 N.J. at 603. We are also satisfied the evidence, viewed in the light most favorable to plaintiff, would permit a rational factfinder to conclude that CFS was liable for the manner in which it addressed plaintiff's sexual harassment complaint. More specifically, one could find CFS liable for how it decided to transfer plaintiff, allegedly without her assent, rather than investigate plaintiff's complaints and work collaboratively with DCPP to address the misconduct committed by DCPP's employee. Although it is true that CFS did not have the authority to discipline or transfer Palumbo, we believe a rational jury could conclude that it could have worked with DCPP and asked it to exercise its authority over Palumbo in an effort to address her sexual harassment complaint against Palumbo.

We add that to establish a retaliation claim under the LAD, N.J.S.A. 10:5-12(d), a plaintiff must "demonstrate that: (1) they engaged in a protected activity known by the employer; (2) thereafter the employer unlawfully retaliated against them; and (3) their participation in the protected activity caused the retaliation."

Rios v. Meadowlands Hosp. Med. Ctr., 463 N.J. Super. 280, 287 (App. Div. 2020) (quoting Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 125 (2008)).

Here, plaintiff engaged in a protected activity by making complaints, including during her meeting with CFS supervisor and HR Director, and formally during the EEO investigation. With respect to adverse employment action, there appears to be a genuine factual dispute as to whether plaintiff's transfer to the Camden office was voluntary or involuntary. See Mancini v. Twp. of Teaneck, 349 N.J. Super. 527, 564-65 (App. Div. 2002) (holding that an involuntary transfer may qualify as adverse employment action).

We offer no opinion on the substantive merits of plaintiff's claims against her employer. We hold only that there are fact-sensitive issues concerning CFS's liability under the LAD that are not appropriate for summary judgment and must instead be decided by a jury. Accordingly, we reverse the order dismissing plaintiff's LAD claims against CFS and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

Affirmed in part and reversed and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3601-22